IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER D. FORNEY, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-24-0936 |
| ROBERT F. KENNEDY, JR., | * | |
| *Secretary Department of Health and Human Services* | * | |
| *Defendant.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

In this case, Plaintiff Christopher D. Forney ("Plaintiff" or "Mr. Forney") alleges federal discrimination and retaliation claims against his former employer, Defendant Robert F. Kennedy, Jr., Secretary of the United States Department of Health and Human Services ("Defendant" or "DHHS"). *See* (ECF No. 14). Between June 2010 and his termination on August 25, 2022, Mr. Forney was a GS-13 Records and Information Management Specialist in Defendant's sub-agency, Indian Health Services' Office of Management Services, Division of Regulatory and Policy Coordination. (*Id.* ¶ 2.) He alleges that beginning in 2019, he experienced race- and age-based discrimination and retaliation. (*Id.* ¶ 5.) On March 29, 2024, Mr. Forney initiated this action by filing in this Court a four-Count Complaint (ECF No. 1), which he amended on April 12, 2024, (ECF No. 5). On September 2, 2025, Plaintiff filed the operative, four-Count Second Amended Complaint alleging against Defendant: (1) Race discrimination (disparate treatment) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (Count I); (2) Retaliation (adverse actions and disparate

treatment) in violation of Title VII (Count II); (3) Age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.* (Count III); and (4) retaliation in violation of the ADEA (Count IV).  (ECF No. 14.)

Presently pending before this Court are: (1) Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 30) ("Defendant's Motion" or "Motion to Dismiss");[1] (2) Plaintiff's Motion for Relief Pursuant to Federal Rule Civil Procedure 56(d) (ECF No. 35) ("Plaintiff's Motion for Discovery"); and (3) Plaintiff's Motion for Leave to File Limited Surreply in Opposition to Defendant's Motion (ECF No. 41).  Plaintiff has responded in Opposition (ECF Nos. 34, 35) to Defendant's Motion, and Defendant has filed a joint reply in support of its Motion and in Opposition to Plaintiff's Motion for Discovery (ECF No. 40). The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 30) is GRANTED.  Specifically, the discrimination claims under Title VII in Count I and the ADEA in Count III are DISMISSED WITH PREJUDICE.   The retaliation claims under Title VII in Count II and the ADEA in Count IV, however, are DISMISSED WITHOUT PREJUDICE and with leave to amend within fourteen days of the date of this Memorandum Opinion and Order.  Separately, Plaintiff's Motion for Discovery (ECF No. 35) is DENIED AS MOOT, and Plaintiff's Motion for Leave to File Surreply (ECF No. 41) is DENIED.

---

[1] As explained below, the Court construes Defendant's Motion (ECF No. 30) pursuant to Federal Rule Civil Procedure 12(b)(6).

**BACKGROUND**

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Second Amended Complaint (ECF No. 14) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 30).[2]

Mr. Forney's claims arise from his employment with the federal government between June 2010 and August 25, 2022. (ECF No. 14 ¶ 9.) During that period, Mr. Forney, who is an African American man born in 1961, served as a GS-13 Records and Information Management Specialist in Indian Health Services' Office of Management Services ("OMS"), Division of Regulatory and Policy Coordination ("DRPC"). (*Id.* ¶¶ 2, 9.) Indian Health Services ("IHS") is a subagency of United States Health and Human Services, which is presently led by Defendant Secretary Kennedy ("Defendant" or "DHHS"). (*Id.* ¶ 2.) As relevant to his allegations in this case, Mr. Forney worked at Defendant's offices in Rockville, Maryland. (*Id.* ¶ 3.) Between 2015 and 2020, his supervisor was Carl G. Mitchell ("Mr. Mitchell"), an American Indian man who served as Director of IHS Department of Regulatory and Policy Coordination. (*Id.* ¶ 11.) In 2020, Evonne Bennett ("Ms. Bennett"), an American Indian woman born in 1975 who served as an IHS Management Analyst, became Mr. Forney's

---

[2] As explained below, the Court also derives facts from (1) Plaintiff's EEO complaints, which are integral to the Second Amended Complaint; and (2) the Merit System's Protection Board's January 2024 initial decision in Plaintiff's administrative case, which is subject to judicial notice.

acting supervisor.  (*Id.* ¶ 12.)  At all relevant times, Plaintiff's second-line supervisor was Christopher R. Jones ("Mr. Jones"), a Caucasian/Native American man born in 1972, who served as Director of the Division of Administration and Emergency Services, Acting Deputy Director of OMS, and Acting Director for the Division of Asset Management.  (*Id.* ¶ 10.)

Mr. Forney alleges that between 2020 and his termination on August 25, 2022, he endured race- and age-based discrimination and retaliation.  *See generally* (*id.* ¶¶ 13–31; ECF No. 30-3 at 44–49).  Before filing this action, Mr. Forney challenged the alleged discrimination and retaliation before DHHS's Equal Employment Office ("EEO"), *see* (ECF No. 30-3), and the Merit Systems Protection Board, which reviews certain federal personnel actions.  During that administrative process, Mr. Forney raised thirteen claims of discrimination and retaliation.  *See generally* (ECF No. 30-3 at 44–49).  This Court organizes Mr. Forney's allegations chronologically, grouping some allegations together when appropriate.[3]

## I.    Initial Allegations of Discrimination

### A.  Criticism and Performance Rating in 2020

Mr. Forney alleges that he had no performance issues between 2010 and 2019.  (ECF No. 14 ¶ 13.)  Beginning when Ms. Bennett was assigned to his group in 2020, however, he alleges that he was repeatedly set up for failure because his supervisors wanted to replace him with younger, Native American employees.  (*Id.* ¶ 32.)  Mr. Forney alleges that between 2020 and his termination in 2022, he faced ongoing belittlement and ridicule from his second-line supervisor, Mr. Jones.  (*Id.* ¶¶ 14–15.)  In July 2020, for example, Mr. Forney sent out a

---

[3]  Both parties set forth the numbered EEO claims in chronological order, thus renumbering some claims where appropriate.  This Court does not utilize the claim numbers in the parties' filings.

communication that he believed had been cleared by his acting supervisor. (ECF No. 30-3 at 46.) On July 22, 2020, Mr. Jones allegedly told Plaintiff that communication was "out of [his] swim lane." (*Id.*; ECF No. 14 ¶ 21.) On July 28, 2020, Mr. Jones ridiculed Mr. Forney about the manner in which he conducted a meeting with Area Records Management designees and, the following day, forbid Mr. Forney from contacting an employee in advance of another meeting set for August 6, 2020. (ECF No. 30-3 at 46; ECF No. 14 ¶ 21.) Mr. Jones scheduled the August 6, 2020, meeting without Mr. Forney's knowledge. (ECF No. 14 ¶ 21.)

On February 10, 2021, Mr. Forney learned from Ms. Bennett, who had served as his acting supervisor during 2020 and as Acting Director of the Department of Regulatory and Policy Coordination ("DPRC"), that his annual performance rating for 2020 would be 2.83. (*Id.* ¶ 16; ECF No. 30-3 at 40–41.) According to Mr. Forney, Mr. Jones "usurped the rating Ms. Bennett would have given" him. (ECF No. 14 ¶ 16; ECF No. 30-3 at 40–41.) Mr. Forney believes that this poor rating and Mr. Jones' previous ridicule were based on his race because non-African American employees supervised by Mr. Mitchell and Mr. Jones, including Heather McClain, Ms. Bennett, Mona Galtin, and Robin Bristow, did not receive a lower rating or face such ridicule. (ECF No. 30-3 at 40, 41.) Relatedly, he alleges that employees under the age of 40 supervised by Mr. Jones, including Ashley Marth, did not receive lower performance ratings. (*Id.*)

### B. Unreasonable Expectations, Denial of Within-Grade Increase, Letter of Expectations

Between June 2021 and Mr. Forney's removal from service in August 2022, he alleges that Mr. Mitchell—apparently acting at the direction of Mr. Jones—held him to unreasonable expectations regarding what should be included in his Records Management Program. (ECF

No. 14 ¶¶ 15, 20; ECF No. 30-3 at 39–40.)    On or about May 20, 2021, for example, Mr. Mitchell assigned Plaintiff the role of Records Liaison Officer for the Headquarters.  (*Id.* ¶¶ 17, 20.)  According to Mr. Forney, this role was inappropriate pursuant to federal regulations codified at 36 C.F.R. § 1120.34(d), which direct that the Records Liaison Officer role should be filled by a designated employee within each of DPRC's four components.  (*Id.* ¶ 17.)  Mr. Forney alleges that, pursuant to the regulation, his position as Records Management Officer would then coordinate and work with each of the four designated employees.  (*Id.*)  Mr. Forney raised his concerns about the alleged regulatory violation to Mr. Mitchell, noting that it would be a conflict of interest if he acted as the Records Liaison Officer for Headquarters while also serving as the Records Management Officer.  (*Id.*)

On June 8, 2021, Mr. Mitchell wrote to Human Resources to deny Mr. Forney a Within-Grade Increase based on Mr. Forney's unsatisfactory 2020 performance rating.  (*Id.* ¶ 18; ECF No. 30-3 at 39.)  Mr. Forney ultimately received the Within-Grade Increase, however, due to a procedural error.  (*Id.* ¶ 18; ECF No. 30-3 at 39.)  At some point thereafter, Mr. Forney expressed to someone named Ms. Butler[4] his concerns regarding Mr. Mitchell's actions.  (ECF No. 14 ¶ 18.)  On July 29, 2021, Mr. Mitchell acted at Mr. Jones' direction to issue Mr. Forney a Letter of Expectations regarding performance issues.  (ECF No. 30-3 at 40.)  In the Letter of Expectations, Mr. Mitchell stated that that in May 2021 Mr. Forney declined appointment as the DRPC Records Liaison Officer.  (*Id.*; ECF No. 14 ¶ 20.)  Also in July 2021, Mr. Mitchell acted at Mr. Jones' direction to prohibit Plaintiff from assuming any role in buying software.

---

[4]  Mr. Forney mentions Ms. Butler only once in his Second Amended Complaint and does not provide her full name or her position as relevant to his alleged reports regarding Mr. Mitchell.  *See* (ECF No. 14 ¶ 18); (ECF No. 30-1 at 24 (noting Plaintiff does not identify Ms. Butler)).

(ECF No. 14 ¶ 19; ECF No. 30-3 at 39.)  Mr. Jones questioned why Mr. Forney went to meet with a software vendor and informed Mr. Forney that he had nothing to do with acquisitions. (ECF No. 14 ¶ 19; ECF No. 30-3 at 39.)  Mr. Forney believed the attempt to deny the Within-Grade Increase, attempt to assign him as Headquarters' Records Liaison Officer, and Letter of Expectations were impermissibly based on his race and/or his age because no non-African American employees or employees younger than 40 faced similar difficulties.  (ECF No. 14 ¶¶ 18; ECF No. 30-3 at 39–40.)

## II.    Initial EEO Complaint and Subsequent Amendments

On August 26, 2021, Mr. Forney contacted a counselor within DHHS's Equal Employment Office ("EEO").  (ECF No. 14 ¶ 5; ECF No. 30-3 at 39.)  He alleges that he previously raised complaints to EEO counselor Angela Porter in 2019, (ECF No. 14 ¶¶ 43, 59), but he does not provide those 2019 complaints in his filings.  On December 1, 2021, Mr. Forney filed a formal EEO complaint detailing the alleged criticism, performance rating, unreasonable expectations, and attempted denial of a Within-Grade Increase.  (ECF No. 30-3 at 42.)  While that complaint remained pending, Mr. Forney continued to serve as a Records and Management Specialist until his removal in August 2022.  During this period, he twice amended his EEO complaint: once in an amendment signed April 8, 2022, and again in an amendment signed May 5, 2022.  *See* (ECF No. 30-3 at 49, 55.)

## III.   Allegations of Discrimination and Retaliation after Initial EEO Complaint

### A. Denial of Telework and Travel Opportunities

On or about February 22, 2022, approximately three months after Mr. Forney signed his initial EEO complaint, he was denied teleworking opportunities afforded to other

employees.  (ECF No. 14 ¶ 22; ECF No. 30-3 at 46.)  Specifically, every other DPRC employee, including two younger Native American women, Ms. Bennett and Ms. Bristow, were permitted to telework all but one day each week while Mr. Forney was required to work on-site.  (ECF No. 14 ¶ 22; ECF No. 30-3 at 46.)  Mr. Jones and Mr. Mitchell allegedly denied Mr. Forney the opportunity to telework by citing his poor performance rating for 2021.  (ECF No. 30-3 at 46.)  Mr. Forney contends that this denial was at least in part in retaliation for contacting an EEO counselor in August 2021 and later filing a formal complaint.  (ECF No. 34 at 35.)

On or about March 2022, Mr. Mitchell and Mr. Jones assigned Mr. Forney timekeeping duties allegedly inappropriate for his position.  (ECF No. 14 ¶ 23.)  Mr. Forney alleges that timekeeping duties were not within his job description, and all other employees were permitted to refuse the timekeeping assignment.  (*Id.*)  Mr. Mitchell and Mr. Jones did not lessen Mr. Forney's other duties to alleviate his workload considering the new assignment.  (*Id.*)  According to Mr. Forney, the timekeeping duties should have been assigned to a lower-grade employee.  (ECF No. 30-3 at 47.)  Thereafter, on April 8, 2022, Mr. Forney amended his original EEO complaint to add allegations regarding this alleged disparate treatment in February 2022 and March 2022.  (ECF No. 30-3 at 55.)

Mr. Forney alleges that such disparate treatment continued throughout 2022.  On or about April 18, 2022, for example, Mr. Mitchell removed from Mr. Forney's duties the task of reviewing SF-135 forms from area offices.  (*Id.*; ECF No. 14 ¶ 24.)  Mr. Forney notes that similarly situated employees did not have such tasks removed from their duties.  (ECF No. 30-3 at 47.)  Two days later, on or about April 20, 2022, Rear Admiral Michael Weahkee ("RADM Weahkee"), Assistant Surgeon General and Deputy Director of IHS's Phoenix Area

Office, submitted an email request to have Mr. Forney detailed to the Phoenix Area Office. (ECF No. 14 ¶ 25.)  RADM Weahkee asked to add Mr. Forney as a member of the Phoenix Area records management planning team.  (*Id.*)  According to Mr. Forney, Mr. Mitchell routinely approved similar requests.  (ECF No. 30-3 at 47.)  Although RADM Weahkee initiated the request, Mr. Mitchell accused Mr. Forney of attempting to request an in-person detail to Phoenix.  (*Id.*)  The request was denied on April 22, 2022.  (ECF No. 14 ¶ 25.)

### B. Suspension and Removal

On May 2, 2022, Mr. Mitchell issued to Mr. Forney a Proposed 14-day Suspension based on deliberate and malicious refusal to comply with Rules, Regulations, Written Procedures, and/or Proper Supervisory Instructions at least in part due to Mr. Forney's refusal of timekeeping duties.  (*Id.* ¶ 26; ECF No. 30-3 at 47.)  According to Mr. Forney, no other co-workers, including non-African American and/or younger coworkers, were disciplined for refusal of timekeeping duties.  (ECF No. 14 ¶ 26.)  On May 3, 2022, before the suspension began, Mr. Forney learned that he was not issued a government cell phone even though Mr. Mitchell provided cell phones to other employees beginning the week of April 25, 2022.  (*Id.* ¶ 27; ECF No. 30-3 at 47.)  As a result of this non-issuance of a cell phone, Mr. Mitchell had to use his personal cell phone.  (ECF No. 30-3 at 47.)  Shortly thereafter, on May 5, 2022, Mr. Forney amended his December 2021 EEO complaint for a second time.  (*Id.* at 49.)

Mr. Forney's suspension occurred from June 19, 2022, to July 2, 2022.[5]  (ECF No. 14 ¶ 26.)  On July 16, 2022, Mr. Mitchell instructed Mr. Forney via email to leave his IHS issued

---

[5]  Mr. Forney's Second Amended Complaint alleges that the suspension occurred between June 19, 2023, and July 2, 2023, (ECF No. 14 ¶ 26), but Mr. Forney was removed from service in August 2022 (*id.* ¶ 31).  For this reason, the Court construes the reference to 2023 as a typographical error.

laptop computer at Plaintiff's workstation during the suspension. (*Id.* ¶ 28.) Mr. Forney became concerned about leaving his computer at his workstation, however, because he was the only employee in the unit and there was no way for him to secure the laptop in the office. (*Id.*) As a result, he declined to leave his computer at his workstation. (*Id.*) He alleges that no other co-workers, including Ms. Bennett and Ms. Bristow, were instructed via email to leave their computers at headquarters. (*Id.*)

On July 25, 2022, Mr. Forney received a Letter of Proposed Removal that included specifications of deliberate or malicious refusal to comply with rules, regulations, written procedures, and/or proper supervisory instructions. (*Id.* ¶ 29.) Specification One noted Mr. Forney's noncompliance with instructions to leave his laptop at his workstation during his suspension. (*Id.*) Specification Two included his refusal to perform the timekeeping duties assigned to him in March 2022. (*Id.*) According to Mr. Forney, no other employees received such a Letter of Proposed Removal, and each of his co-workers was permitted to refuse the timekeeping assignment. (*Id.*) On August 16, 2022, Mr. Forney submitted to Santiago Almaraz ("Mr. Almaraz"), Director of the Office of Management Services, his response to the proposed removal. (*Id.* ¶ 30.) On August 25, 2022, Mr. Almaraz issued a Decision Letter on Proposed Removal, and Mr. Forney's employment was terminated. (*Id.* ¶ 31.) DHHS identified two bases for Mr. Forney's removal: (1) failure to leave his IHS-issued computer at his desk during his suspension as instructed; and (2) failure to perform the timekeeping duties. *See Forney v. Dep't of Health & Hum. Servs.*, No. DC-0752-23-0314-I-1, 2024 WL 1662980 (MSPB Jan. 25, 2024). Mr. Forney alleges that no other co-workers, including Ms. Bennet and Ms. Bristow, were terminated for refusing timekeeping duties. (ECF No. 14 ¶ 31.)

### IV.    Procedural History

After his termination in August 2022, Mr. Forney continued to administratively pursue the claims of discrimination and retaliation that he initially reported to the EEO in 2021. After the EEO upheld the personnel actions, he appealed the EEO determination to the Merit Systems Protection Board,[6] which issued an initial decision affirming his removal from service on January 25, 2024. *See Forney v. Dep't of Health & Hum. Servs.*, No. DC-0752-23-0314-I-1, 2024 WL 1662980 (MSPB Jan. 25, 2024). On March 29, 2024, Plaintiff initiated this action by filing in this Court a four-Count Complaint against then-Secretary of DHHS Xavier Becerra. (ECF No. 1.) Specifically, Plaintiff alleged (1) Race Discrimination (Disparate Treatment) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* (Count I); (2) Retaliation (Adverse Actions and Disparate Treatment, Race, Gender, and Prior EEO Activities) in violation of Title VII (Count II); (3) Age Discrimination (Disparate Treatment) in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.* (Count III); and (4) Retaliation (Disparate Treatment), in violation of the ADEA (Count IV). *See generally* (ECF No. 1). On April 12, 2024, Plaintiff filed an Amended Complaint alleging the same four claims. (ECF No. 9.)

At the parties' requests, this matter was then repeatedly stayed pending resolution of Mr. Forney's "EEOC case in a related claim for discrimination, retaliation, and hostile work environment," (ECF No. 10 at 1), and a subsequent lapse of federal appropriations, (ECF No. 19 ¶ 1). *See generally* (ECF Nos. 10, 11, 19, 20, 21, 22.) On August 14, 2025, while this case

---

[6] As explained below, the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1101 *et seq.*, allows a federal employee to challenge certain personnel actions, including allegedly discriminatory or retaliatory actions, before the agency EEO and the Merit Systems Protection Board ("MSPB"), which is "an independent adjudicator of federal employment disputes." *Kloeckner v. Solis*, 568 U.S. 41, 43, 44 (2012).

was stayed, Mr. Forney requested a Final Agency Decision in his EEOC case. (ECF No. 17 ¶ 5.) On September 5, 2025, Mr. Forney filed the operative four-Count Second Amended Complaint (ECF No. 14), alleging the same claims raised in his original Complaint and asserting that he had properly exhausted administrative remedies under Title VII and the ADEA. (*Id.* ¶ 14.) On December 10, 2025, this Court lifted the operative stay and approved the parties' proposed schedule in this case. (ECF Nos. 21, 22.)

On March 2, 2026, consistent with the parties' proposed schedule, Defendant filed the pending Motion to Dismiss or in the Alternative For Summary Judgment (ECF No. 30). Plaintiff responded in Opposition (ECF Nos. 33, 34) and filed a Motion for Discovery Under Rule 56(d) (ECF No. 35) ("Plaintiff's Motion for Discovery"). Defendant filed a joint Reply in support of its motion and in opposition to Plaintiff's Motion for Discovery (ECF No. 40.) Finally, Plaintiff filed a Motion for Surreply (ECF No. 41). This matter is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1101 *et seq.*, "establishes a framework for evaluating personnel actions taken against federal employees."  *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 423 (2017) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012)).  It allows a federal employee to challenge personnel actions before the Merit Systems Protection Board ("MSPB"), "an independent adjudicator of federal employment disputes."  *Kloeckner*, 568 U.S. at 43, 44; *see* 5 U.S.C. § 7702.  Cases in which an employee challenges a personnel action *and* alleges discrimination are known as mixed cases.  *Perry*, 582 U.S. at 424.  In a mixed case, an employee alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq*, "'may first file a discrimination complaint with the agency itself,' in the agency's

13

equal employment opportunity ("EEO") office." *Perry*, 582 U.S. at 424 (quoting *Kloeckner*, 568 U.S. at 45). She may then appeal to the MSPB or file a claim in federal district court. *Kloeckner*, 568 U.S. at 45. Where, as here, a plaintiff raised claims to the MSPB and then to the district court, the "discrimination and retaliation claims are to be evaluated under the familiar summary judgment [or 12(b)(6)] standard." *Furey v. Mnuchin*, 334 F. Supp. 3d 148, 159 (D.D.C. 2018); *see Cousin v. United States*, 230 F. Supp. 3d 475, 489–90 (E.D. Va. 2017); 5 U.S.C. § 7703(c). With this background in mind, the Court first addresses conversion of Defendant's Motion, Plaintiff's Rule 56(d) Motion, and Plaintiff's Motion for Leave to File Surreply as threshold matters governing information and arguments applicable to Defendant's Motion.

## I.       Conversion of Defendant's Motion is not appropriate

Defendant has captioned its Motion as a Motion to Dismiss or in the Alternative For Summary Judgment. As Judge Hollander of this Court has explained, "a motion styled in the alternative, *i.e.*, to dismiss or for summary judgment, implicates the court's discretion under Federal Rule Civil Procedure 12(d) to consider matters outside of the pleadings." *Hart v. Lew*, 973 F. Supp. 2d 561, 572 (D. Md. 2013) (citing *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011)). "A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Id.* (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.)). "Where, as here, the movant expressly captions the motion 'in the alternative,' as one to dismiss or for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed

14

to be on notice that conversion under Rule 12(d) may occur[.]" *Id.* As set forth below, this Court construes Defendant's Motion under Rule 12(b)(6) and considers only the pleadings—including items integral to the operative complaint—and matters subject to judicial notice.

Unless the parties have "had an opportunity for reasonable discovery," conversion to summary judgment generally is inappropriate. *Id.* at 573 (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). To invoke the need for discovery as a basis to avoid conversion to summary judgment, the non-movant must file "an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)) explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition' without needed discovery." *Hart*, 973 F. Supp. 3d at 573 (quoting Fed. R. Civ. P. 56(d)); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Mr. Forney has filed a Rule 56(d) affidavit requesting discovery that he contends was either unavailable or not fully developed during the administrative process. *See* (ECF No. 35; ECF No. 35-1). Where, as here, a plaintiff files a Rule 56(d) affidavit after pursuing claims administratively, courts consider the scope of administrative discovery, whether the proceedings were adversarial, and whether the administrative record is binding upon the court. *See, e.g.*, *Tate v. King*, Civ. No. JRR-23-3358, 2025 WL 509133, at *5 (D. Md. Feb. 14, 2025) (collecting cases).

"[D]enial of additional discovery is appropriate when the materials sought by the requesting party could have been discovered earlier, including in the course of administrative discovery." *Courtney-Pope v. Bd. of Educ. of Carroll Cnty.*, 304 F. Supp. 3d 480, 490 (D. Md. 2018) (collecting cases); *see Khoury v. Meserve*, 268 F. Supp. 2d 600, 612 (D. Md. 2003) (concluding full adversarial record before MSPB was sufficient to convert Rule 12(b)(6) motion to one for

15

summary judgment) *aff'd* 85 F. App'x 960 (4th Cir. 2004) (per curiam).  As Judge Chuang of this Court has explained, however, where a plaintiff "has a right to bring a civil action in federal court, rather than a right to appeal an administrative action to federal court, she should not be denied the opportunity to use the discovery provisions of the Federal Rules of Civil Procedure to supplement the record before adjudication of the merits of her case." *Plummer v. Wright*, Civ. No. TDC-16-2957, 2017 WL 4417829, at *4 (D. Md. Oct. 3, 2017).  This reluctance toward pre-discovery summary judgment in Title VII cases reflects that claims implicating factual disputes as to intent or motive are ill-suited for conversion to summary judgment. *See, e.g.*, *Harrods*, 302 F.3d at 246–47; *McCray v. Md. DOT*, 741 F.3d 480, 484 (4th Cir. 2014).

Here, Mr. Forney has already engaged in discovery via administrative proceedings before his agency's Equal Employment Office ("EEO") and the Merit Systems Protection Board ("MSPB").  During the MSPB appeal, Plaintiff conducted depositions of: (1) his prior acting supervisor, Ms. Bennett (ECF No. 30-7); (2) his prior second-line supervisor, Director of OMS Santiago Almaraz ("Mr. Almaraz") (ECF No. 30-8); (3) his second-line supervisor, Mr. Jones (ECF No. 30-10); and (4) his supervisor, Mr. Mitchell (ECF No. 30-16).  Mr. Forney also participated in a brief adversarial hearing involving direct and cross-examination of three witnesses for the agency—Mr. Mitchell, Mr. Almaraz, and Ms. Latoya Butler-Smith—and of Mr. Forney, who testified on his own behalf.  (ECF No. 30-6 at 3.)  In his Rule 56(d) affidavit, Mr. Forney seeks additional discovery as to: (1) documents and communications regarding his role and responsibilities; (2) depositions of witnesses, including Mr. Mitchell and Mr. Jones; and (3) documents to identify additional comparators.  (ECF No. 35 at 1-6; ECF No. 35-1.)

16

Despite this administrative record, conversion to summary judgment remains premature. Mr. Forney alleges discrimination and retaliation, but Defendant maintains that it disciplined and removed him from service due to performance issues. *Compare* (ECF No. 14) *with* (ECF No. 30-1 at 24–33.) This dispute demands determination of Defendant's intent, which implicates the parties' credibility. *See Hart*, 973 F. Supp. 2d at 574; *Harrods*, 302 F.3d at 246–47. Moreover, conversion is premature where the non-movant asserts a need to depose supervisors or obtain information as to employment decisions or comparators that "lies in the control of the moving party." *McCray*, 741 F.3d at 484; *see also Tate*, 2025 WL 509133, at *5; *Ryan v. Wolf*, Civ. No. ELH-19-1968, 2021 WL 409747, at *8 (D. Md. Feb. 5, 2021). Although Mr. Forney has already deposed supervisors, his Rule 56(d) affidavit identifies information within the control of Defendant, including comparator and pretext evidence such as documents related to Mr. Mitchell's authority, Plaintiff's duties, and telework agreements for similarly situated individuals. (ECF No. 35-1 ¶¶ (c)–(e), (m), (o)); *see McCray*, 741 F.3d at 484. Thus, this Court construes Defendant's Motion as a motion to dismiss under Rule 12(b)(6).

As a result, review of the record is limited to the pleadings, including matters integral to the Second Amended Complaint, and matters subject to judicial notice. *See, e.g.*, *Leacock v. IonQ, Inc.*, Civ. No. DLB-22-1306, 2023 WL 6308045, at *8 (D. Md. Sep. 28, 2023) (quoting *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 666–67 (D. Md. 2018)). In employment discrimination cases, courts routinely consider EEO proceedings integral to the complaint. *See, e.g.*, *Murray v. Nat'l Insts. of Health*, Civ. No. PX-21-0390, 2023 WL 2035903, at *1 n.2 (D. Md. Feb. 15, 2023) (collecting cases). MSPB proceedings may be integral to the complaint if they are attached to a dispositive motion and the plaintiff does not dispute their authenticity,

17

and MSPB decisions are subject to judicial notice.  *E.g.*, *West v. Mayorkas*, Civ. No. JKB-23-1661, 2024 WL 3878375, at *5 n.4 (D. Md. Aug. 20, 2024) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016)); *Doyle v. McDonough*, Civ. No. ELH-20-3478, 2021 WL 4846938, at *13 (D. Md. Oct. 15, 2021).  Here, both parties have attached the administrative record to their briefing.  Mr. Forney references his EEO complaints but not the MSPB proceedings in his Second Amended Complaint.  *See* (ECF No. 14 ¶ 5).  This Court considers Mr. Forney's EEO reports, (ECF No. 30-3 at 37–55), as integral to his Second Amended Complaint and takes judicial notice of the MSBP's initial decision, (ECF No. 30-19).[7]

## II.    Plaintiff's Rule 56(d) Motion

As explained above, the Court construes Defendant's Motion pursuant to Federal Rule 12(b)(6).  Under Rule 56(d) "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (quoting *Nguyen v. CAN Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).  Where a court declines to convert a Rule 12(b)(6) motion, it need "not reach . . . Plaintiff's request for discovery to respond to the motion for summary judgment pursuant to Rule 56(d)."  *Shivers v. Saul*, Civ. No. JKB-19-2434, 2020 WL 7055503, at *3 (D. Md. Dec. 2, 2020); *accord Shain v. Washington Cnty.*, 818 F. Supp. 3d 709, 713 (D. Md. 2026).  Plaintiff's Rule 56(d) Motion is DENIED AS MOOT.

---

[7] The initial MSPB decision is publicly available.  *See Forney v. Dep't of Health & Hum. Servs.*, No. DC-0752-23-0314-I-1, 2024 WL 1662980 (MSPB Jan. 25, 2024).

### III.   Plaintiff's Motion for Leave to File Surreply

As Judge Boardman of this Court has noted, "[s]urreplies are 'generally disfavored'" but may be authorized where a movant newly raises an issue in a reply brief.  *Keyser v. King*, Civ. No. DLB-23-3030, 2025 WL 2781639, at *7 n.3 (D. Md. Sep. 30, 2025) (quoting *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) *aff'd in part on other grounds*, 778 F.3d 463 (4th Cir. 2015)); *see* Loc. R. 105.2(a) (D. Md. 2025); *accord Khoury*, 268 F. Supp. 2d at 605.  Mr. Forney seeks to file a surreply based on his assertion that Defendant broadened its arguments and submitted new evidence in its Reply, *see* (ECF No. 41 at 2), but his proposed Surreply reiterates the arguments already briefed in his opposition filings.  *See* (ECF No. 41; ECF Nos. 34, 35).  Thus, Mr. Forney's Motion for Leave to File Surreply (ECF No. 41) is DENIED.

### IV.   Defendant's Motion to Dismiss

As the U.S. Court of Appeals for the Fourth Circuit has recognized, "Title VII and ADEA claims arise from completely distinct statutory schemes."  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).  "Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin—not age—and prohibits retaliation against anyone who opposes those practices or makes a charge of discrimination in violation of Title VII."  *Faulconer v. Centra Health., Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020); *see also* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).  Separately, the ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 591 (2004).  Mr. Forney alleges that he faced discrimination and retaliation under the ADEA based on his age as an individual older than 40 and under Title

VII based on his race as an African American.[8]  In its Motion (ECF No. 30), Defendant contends that his allegations are either time-barred or insufficient to state claims under Title VII or the ADEA.  *See* (ECF No. 30-1 at 20–33.)

### A.  Timeliness of allegations prior to July 12, 2021[9]

As applicable to Title VII and ADEA claims, "[a] federal employee must consult with an EEO counselor within 45 days of any alleged discrimination, harassment, or retaliation." *Onwudiwe v. Becerra*, Civ. No. TDC-21-1620, 2023 WL 5338156, at *7 (D. Md. Aug. 18, 2023) (citing 29 C.F.R. § 1614.105(a)(1)); *accord Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996) (Title VII); *Song v. Becerra*, No. 20-1554, 2021 WL 3732961, at *2 (4th Cir. Aug. 24, 2021) (ADEA).  "A plaintiff's failure to initiate contact within the 45-day window 'is tantamount to failure to timely exhaust all administrative remedies,'" which generally requires dismissal. *West*, 2024 WL 3878375, at *7 (quoting *Blount v. Dep't of Health & Hum. Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004)).  Defendant contends that Mr. Forney's allegations of discrimination before July 12, 2021—specifically, (1) his 2020 performance rating; (2) Mr. Jones' communications in July 2020; and (3) the February and June 2021 attempts to deny a Within-Grade Increase—are untimely because they occurred more than 45 days before he first contacted the EEO on August 12, 2021.  (ECF No. 30-1 at 20–21.)  In Opposition, Plaintiff

---

[8] Mr. Forney's Second Amended Complaint also references his gender in the caption of his Title VII retaliation claim in Count II.  (ECF No. 14 at 9.)  He alleges no substantive facts regarding gender discrimination, however, and neither party addresses gender discrimination in briefing.

[9] In assessing a motion under Rule 12(b)(6), a court may only address "the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred . . . in the relatively rare circumstances where . . . all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  Additionally, "the defendant must show 'that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint.'" *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (quoting *Goodman*, 494 F.3d at 466).  Here, Mr. Forney has alleged the dates of his EEO contacts in his Second Amended Complaint such that this Court addresses Defendant's timeliness arguments.

asserts that he spoke to Angela Porter ("Ms. Porter") at the EEO office in 2019 about "discrimination and harassment by Ms. Bennett and his supervisory chain . . . ." (ECF No. 34 at 26.)  He argues that this contact caused him to believe that future reports would be futile, and thus equitable estoppel should apply to his case.  (*Id.* at 26–27.)  Separately, he asserts that his claims are timely under the continuing violation doctrine.[10]  (*Id.* at 27–28.)

As an initial matter, although Mr. Forney argues that he contacted an EEO officer in 2019, this report does not affect the timeliness of his claims.  An employee must initiate EEO contact "within 45 days of the date of the matter alleged to be discriminatory, or in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  As to the reporting period, "[t]he date of the alleged discriminatory action is the date 'when the [employee] knows, or has reason to know, of such action.'"  *Stewart v. Ross*, 2020 WL 1907471, at *11 (E.D. Va. Apr. 17, 2020) (quoting *Crumps v. TCoombs & Assocs., LLC*, 2015 WL 5601885, at *26 (E.D. Va. Sep. 22, 2015)).  EEO contact that occurred *before* the challenged acts thus cannot satisfy the reporting requirement.  *See McGlaughlin v. Barr*, 2020 WL 869914, at *5–6 (M.D.N.C. Feb. 21, 2020) (deeming some claims untimely despite prior contacts with EEO).  Accordingly, allegations prior to July 12, 2021, are untimely as occurring more than 45-days before Mr. Forney's earliest relevant EEO contact on August 21, 2021.

Moreover, Mr. Forney has not alleged any facts to support his assertion of the doctrine of equitable estoppel based on the 2019 EEO contact.  "While it is true that the deadline

---

[10]  Mr. Forney argues that he called an EEO officer in March 2021, (ECF No. 34 at 26), but he alleges no such contact in his Second Amended Complaint, *see* (ECF No. 14).  As this Court has recognized, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) (quoting *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012)).  Thus, the Court cannot consider any March 2021 contact.

provisions of Title VII are subject to equitable estoppel, before the doctrine will be applied, a Title VII plaintiff must prove that the defendant engaged in affirmative misconduct intended to mislead or deceive [him] into missing the deadline." *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md. Jan. 26, 1999) (internal citations omitted); *see also Dean v. Berlin Fire Co.*, Civ. No. ELH-17-2708, 2018 WL 4468844, at *8 (D. Md. Sep. 17, 2018) (explaining equitable estoppel requires allegations of "some intentional misconduct by the defendant"). The Fourth Circuit has suggested that "[t]o estop the federal government, a party must show 'affirmative misconduct by government agents.'" *Austin v. Winter*, 286 F. App'x 31, 38 (4th Cir. 2008) (quoting *Dawkins v. Witt*, 318 F.3d 606, 611 (4th Cir. 2003)). Mr. Forney argues that the doctrine of equitable estoppel applies to the extent that he was informed during his 2019 EEO contact that pursuing any claims would be futile, (ECF No. 34 at 26-27), but his Second Amended Complaint is devoid of allegations regarding the substance of his 2019 discussion with Ms. Porter. That is, his brief allegations regarding the 2019 contact do not allege that Ms. Porter informed him future reports would be futile or otherwise deceived him regarding the efficacy of such reports. *See* (ECF No. 14 ¶¶ 43, 59). Even construing all facts and drawing all inferences in Mr. Forney's favor as required at this pleading stage, he has not alleged facts sufficient to plausibly assert that equitable estoppel applies based on the 2019 EEO contact.

Nevertheless, to the extent Mr. Forney alleges hostile work environment, Mr. Jones' alleged discriminatory communications in July 2020 are timely under the continuing violation doctrine. Where the challenged conduct is a "discrete act," "an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred. Such discrete acts of discrimination 'are not actionable if time-

barred, even when they are related to acts alleged in timely filed charges.'" *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Where the challenged conduct involves repetitive acts within the same challenged employment practice, however, the continuing violation doctrine applies so that the related acts "will not be time barred so long as . . . at least one act falls within the time period." *Morgan*, 536 U.S. at 122.  Importantly, the continuing violation doctrine cannot apply to "discrete discriminatory acts," and a "discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222 (4th Cir. 2016) (citing *Morgan*, 536 U.S. at 113).  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" such that it is subject to the continuing violation doctrine.  *Id.* at 221 (quoting *Morgan*, 536 U.S. at 116–17).

Mr. Forney does not bring a standalone claim of hostile work environment, and it is not entirely clear from his Second Amended Complaint whether he is alleging such a claim. At this pleading stage, however, the Court construes the Second Amended Complaint to allege both.  *See, e.g.*, *Henderson v. Md. Transit Admin.*, Civ. No. JRR-23-1267, 2024 WL 916253, at *7 (D. Md. Mar. 1, 2024) (addressing hostile work environment even where it was "not entirely clear from the Complaint whether Plaintiff brings . . . a hostile work environment claim").  Mr. Forney has alleged some instances of discrimination that occurred after July 12, 2021—that is, within 45 days of his report to the EEO officer on August 21, 2021—including, for example, that he was subject to unreasonable expectations in July 2021.  (ECF No. 14 ¶¶ 17, 19, 20.) To the extent Mr. Forney alleges a hostile work environment theory of discrimination, acts

prior to July 12, 2021, that formed the hostile work environment are not untimely.  Discrete acts prior to July 12, 2021, however, remain untimely.

The Supreme Court has defined discrete acts to include "termination, failure to promote, denial of transfer, [and] refusal to hire . . . ." *Morgan*, 536 U.S. at 114.  Significantly, discriminatory performance reviews and denials of a raise generally constitute discrete acts. *See, e.g.*, *Battle v. Burwell*, Civ. No. PWG-14-2250, 2016 WL 4993294, at *6 (D. Md. Sep. 19, 2016) (holding performance evaluation was a discrete act); *Gray-Koyier v. Gladding Chevrolet, Inc.*, Civ. No. RDB-17-1409, 2017 WL 4883144, at *5 (D. Md. Oct. 30, 2017) (collecting cases describing reprimands, including performance evaluations, as discrete acts); *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 813 (E.D. Va. 2003) (listing denial of raise and negative review as discrete acts).  Thus, Mr. Forney's allegations about the 2020 performance evaluation and the 2021 attempt to deny his Within-Grade Increase are time-barred discrete acts.  To the extent that Mr. Forney alleges that Mr. Jones' discriminatory comments in July 2020 reflected an ongoing pattern of discrimination, however, such comments may form a hostile work environment claim subject to the continuing violation doctrine.  In assessing Mr. Forney's claims, this Court considers all alleged conduct after July 12, 2021, and considers Mr. Jones' communications in July 2020 to the extent that Mr. Forney alleges hostile work environment.

### B.  Retaliation and Discrimination Claims

A plaintiff may allege Title VII and ADEA violations using either direct or circumstantial evidence.  *Davis v. Mabus*, 162 F. Supp. 3d 467, 474 (D. Md. 2016)*; see Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012); *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir.

1996) (ADEA).  Where, as here, a plaintiff alleges no direct evidence, such claims are subject to the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[11]  *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018); *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022) (noting *McDonnell Douglas* applies to ADEA).  This Court addresses each claim below, grouping some claims together where appropriate.

### i.    Counts I and III: Discrimination Under Title VII and ADEA

In Counts I and III, Mr. Forney alleges race- and age-based discrimination in violation of Title VII and the ADEA, respectively.  *See* (ECF No. 14).  Pursuant to the *McDonnell Douglas* framework, a plaintiff states a prima facie claim of discrimination by alleging: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Johnson v. Balt. City, Md.*, 163 F.4th 808, 815 (4th Cir. 2026) (quoting *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)); *see also Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (applying burden-shifting framework to ADEA claim).  Significantly, "the requirements for showing an inference of discrimination on an ADEA claim differ from those for a Title VII race discrimination claim[.]" *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 237 (D. Md. 2023).  "[W]hile a race discrimination plaintiff need only show that race was a 'motivating factor' in the decision, an age discrimination

---

[11] Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)) *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003).  Although Plaintiff argues that his superiors made comments such as "this is out of your swim lane," called him "old man," and suggested that he was not "sharp enough," (ECF No. 34 at 31), only the comment "this is out of your swim lane" is alleged in the Second Amended Complaint.  More importantly, whether considered individually or together, these comments do not "bear directly on the contested employment decision," and thus are not direct evidence of discrimination.  *Brinkley*, 180 F.3d at 607.

plaintiff must prove but-for causation: that the employer 'would not have' taken the adverse employment action 'in the absence of age discrimination.'" *Id.* (quoting *Westmoreland v. TWC Admin., LLC*, 924 F.3d 718, 725 (4th Cir. 2019)); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (applying but-for causation to ADEA claims); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 350 (2013) (applying but-for causation to Title VII retaliation claims but not Title VII discrimination claims).

Importantly, *McDonnell Douglas* offers "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "'[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss[.]" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz*, 534 U.S. at 515). The Court's inquiry is limited to whether a plaintiff has alleged facts "that plausibly state a violation . . . 'above a speculative level.'" *Id.* at 617 (quoting *Coleman*, 626 F.3d at 190). In other words, the facts alleged must "support a reasonable inference that the decisionmakers were motivated by bias." *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 586 (4th Cir. 2015). Nevertheless, as Judge Hollander of this Court has recognized, "reference to the elements of a Title VII [or ADEA] claim is helpful to gauge the sufficiency of the allegations." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023).

Here, Mr. Forney has sufficiently alleged membership in a protected class for purposes of his discrimination claims in Counts I and III. Race constitutes a protected class under Title VII, 42 U.S.C. § 2000e-2(a)(1), and individuals over the age of forty receive protected status under the ADEA, 29 U.S.C. § 633a. In briefing of Defendant's Motion to Dismiss (ECF No.

30), the parties do not address whether Mr. Forney has alleged satisfactory job performance.[12] *See generally* (ECF No. 30; ECF No. 34). This Court thus assumes without deciding that Mr. Forney has alleged satisfactory job performance and, like the parties, evaluates whether he has sufficiently alleged adverse employment action and differential treatment. As explained below, Mr. Forney has not alleged facts sufficient to support an inference that his protected traits were either a motivating factor or the but-for cause of any adverse employment action. Accordingly, he has not met his burden to state a plausible claim of discrimination under Title VII in Count I or under the ADEA in Count III.

### ii.    Adverse Employment Action

For purposes of discrimination claims under Title VII and the ADEA, an adverse employment action includes any action that causes "'some disadvantageous change'—which need not be 'significant,' 'serious,' or 'substantial'—in the terms and conditions of her employment." *Herkert v. Bisgnano*, 151 F.4th 157, 165 (4th Cir. 2025) (internal citation omitted) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)); *see Massaro v. Farifax Cnty.*, 95 F.4th 895 (4th Cir. 2024) (analyzing Title VII and ADEA claims together). "Typical adverse employment actions are 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibilities, or reduced opportunities for promotion.'" *Walker v. Md. Dep't of Info. & Tech.*, Civ. No. CCB-20-219, 2020 WL 6393435, at *3 (D. Md. Nov. 2, 2020) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Here, Mr. Forney alleges as adverse actions:

---

[12] To demonstrate satisfactory job performance, an employee "need not 'show that [s]he was the perfect or model employee,' only 'that [s]he was qualified for the job and that [s]he was meeting [her] employer's legitimate expectations.'" *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 256 (4th Cir. 2025) (alterations in original) (quoting *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022)).

(1) a lower performance rating in February 2021; (2) denial of a Within-Grade Increase;[13] (3) denial of telework; (4) imposition of duties outside his position description; (5) denial of a detail to Arizona; (6) a Letter proposing a 14-day suspension on May 2, 2022; (7) a directive regarding workplace equipment on June 16, 2022; (8) a Letter of Proposed Removal on July 25, 2022; and (9) termination on August 25, 2022.  (ECF No. 34 at 29.)  As explained below, his two-week suspension in June 2022 and termination in August 2022 both constitute adverse employment actions.[14]

As this Court has repeatedly recognized, a two-week suspension may constitute an adverse employment action for purposes of a discrimination claim.  *See Smith v. Esper*, Civ. No. GLR-18-3844, 2020 WL 5798085, at *7 (D. Md. Sep. 29, 2020) (citing *Parker v. Sec'y U.S. Dep't of Veterans Affs.*, 676 F. App'x 101, 106 (3d Cir. 2017)); *Snyder v. Azar*, Civ. No. TDC-18-0511, 2020 WL 4605223, at *6 (D. Md. Aug. 10, 2020) (collecting cases).  Mr. Forney alleges that he received a Proposed 14-day suspension on May 2, 2022, which he ultimately served in June 2022.  (ECF No. 14 ¶¶ 26–27.)  At this pleading stage, allegations of a fourteen-day suspension

---

[13]  As explained above, the lower performance rating and attempted denial of a Within-Grade Increase may not be timely.

[14]  Plaintiff's remaining allegations may not constitute adverse employment actions.  Generally, "the mere threat of discipline is not an adverse action unless it actually leads to alterations in the terms and conditions of employment."  *Aly v. Yellen*, Civ. No. AAQ-23-1699, 2024 WL 2053492, at *6 (D. Md. May 8, 2024) (quoting *Gaines v. Balt. City Police Dep't*, 657 F. Supp. 3d 708, 740 (D. Md. 2023)); *see Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 574–75 (4th Cir. 2023) (explaining threat of termination was not adverse employment action). Relatedly, "a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment," such as by reducing the employee's pay.  *Dortch v. Cellco P'ship*, 770 F. App'x 643, 647 (4th Cir. 2019) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)).  Although Defendant attempted to use the February 2021 poor performance review to deny Mr. Forney a Within-Grade Increase, that denial was never realized. Separately, allegations of denial of telework or detail and changed job duties may not rise to the level of an adverse employment action.  *See, e.g.*, *Grimes v. Dep't of Def.*, 2025 WL 1334054, at *3 (E.D. Va. May 7, 2025) (collecting cases); *Walker*, 2020 WL 6393435, at *3 (collecting cases holding that denial of flexible schedule alone is not an adverse employment action); *Couch v. City of Virginia Beach*, 768 F. Supp. 3d 741, 753 (E.D. Va. 2025) (holding changed job duties do not constitute adverse employment actions).  The Court need not reach the remaining alleged adverse actions, however, because Mr. Forney has alleged suspension and termination.

that preceded termination plausibly allege an adverse employment action. Similarly, Mr. Forney's termination in August 2022, (*id.* ¶¶ 29–31), is also an adverse employment action for purposes of his discrimination claims. *E.g.*, *Traore v. Balt. Police Dep't*, Civ. No. MJM-23-0793, 2023 WL 8600553, at *9 (D. Md. Dec. 12, 2023); *Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018); *Davis*, 162 F. Supp. 3d at 474. Accordingly, Mr. Forney has sufficiently alleged adverse employment actions as to Counts I and III.

### iii.    Inference of Discrimination

Nevertheless, Mr. Forney has not sufficiently alleged that such adverse employment actions "occurred under circumstances giving rise to an inference of unlawful discrimination" under Title VII or the ADEA. *Wannamaker-Amos*, 126 F.4th at 255; *Harmon v. Coastal Hospice, Inc.*, Civ. No. RDB-25-1386, 2026 WL 820302, at *5 n.7 (D. Md. Mar. 25, 2026) (requiring allegations sufficient to raise inference of discrimination at Rule 12(b)(6) stage (citing *Johnson*, 163 F.4th at 815)). As explained above, Title VII requires an inference that race was a motivating factor in the alleged discrimination, while the ADEA imposes an "elevated" standard "under which 'the plaintiff must [show] that discriminatory animus was a 'necessary logical condition for the adverse employment action and that the employer did not act because of other legitimate motivations for the action.'" *Rorie*, 653 F. Supp. 3d at 237 (quoting *Arthur v. Pet Dairy*, 593 F. App'x 211, 219 (4th Cir. 2015) (internal quotation marks omitted). This Court first addresses Plaintiff's Title VII discrimination claim in Count I before turning to his ADEA discrimination claim in Count III.

### 1. Title VII Discrimination: Motivating Factor Causation

Under Title VII, a plaintiff may allege an inference that race was a motivating factor in discrimination in either of two ways. First, under the *McDonnell Douglas* framework, the plaintiff may allege that "similarly-situated employees outside the protected class received more favorable treatment." *Johnson*, 163 F.4th at 815 (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). Indeed, "courts have considered comparator evidence to be a particularly probative means for discerning whether a given adverse action was the product of a discriminatory motive." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Second, absent comparator evidence, a plaintiff may satisfy this element of a discrimination claim merely by alleging facts sufficient to support an inference of discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). Mr. Forney has not alleged facts that produce an inference of discrimination under either method.

### a. Comparator Evidence

First, Mr. Forney has not alleged facts sufficient to support an inference of causation based on differential treatment relative to alleged comparators. "[W]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, the plaintiff must demonstrate that the comparator is similarly situated in all relevant aspects." *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 215 (D. Md. 2025) (quoting *Gaines v*, 657 F. Supp. 3d at 735). As Judge Hollander of this Court has explained, "at the motion to dismiss stage, the plaintiff should . . . 'identify the proposed comparator and establish a plausible basis for believing [the employee was] actually similarly situated.'" *Gaines*, 657 F. Supp. 3d at 736 (alteration in original) (internal quotation marks

30

omitted) (quoting *Asi v. Info. Mgmt. Grp.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at \*6 (D. Md. Sep. 13, 2019)).  "While there is no 'bright-line' rule for what makes two comparators 'similar' for purposes of Title VII claims, courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Johnson*, 163 F.4th at 815 (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019)).

Although Mr. Forney identifies as comparators Ms. Bennett and Ms. Bristow, he offers only conclusory allegations of similarity.  Where a plaintiff fails to establish a plausible basis to believe that the comparator is similarly situated, comparator allegations are conclusory and insufficient to state a claim of discrimination.  *See, e.g.*, *Coleman*, 626 F.3d at 191.  That is, where a plaintiff "has not stated whether [the identified comparators] held the same or similar positions as him, had the same supervisor as him, or were subject to the same standards," his allegations are insufficient to support an inference of discrimination.  *Stovall v. H&S Bakery*, Civ. No. TDC-20-3234, 2021 WL 2580746, at \*5 (D. Md. June 23, 2021); *see also Walker*, 2020 WL 6393435, at \*4 (collecting cases); *Franovich v. Hanson*, 687 F. Supp. 3d 670, 684 (D. Md. 2023).  Here, Mr. Forney does not allege that Ms. Bristow and Ms. Bennett held the same job description, were subject to the same standards, were subordinate to the same supervisor, or held comparable qualifications.  Indeed, he alleges that Ms. Bennett was his acting supervisor, which suggests she was *not* similarly situated.  *E.g.* (ECF No. 14 ¶¶ 12, 16.)  Such conclusory allegations of similarity are insufficient to support an inference of discrimination.

### b. Inference of Discrimination Absent Comparator Evidence

Even absent a prima facie claim of discrimination, a plaintiff must plead "facts sufficient to raise the inference of a Title VII violation 'above a speculative level.'" *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) (quoting *Twombly*, 550 U.S. at 555). A plaintiff may meet this burden by showing that his claim remains plausible despite an employer's proffered, nondiscriminatory reasons for the adverse employment action. *See Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). Although courts in the Fourth Circuit have at times framed this inquiry as whether the plaintiff has sufficiently alleged pretext, *e.g. Holloway*, 32 F.4th at 298, allegations of pretext are not required at the Rule 12(b)(6) stage. *Barbour*, 105 F.4th at 590 (citing *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)). The relevant inquiry is merely "whether the employer's explanation 'is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [the plaintiff's] claim of pretext implausible.'" *Id.* (citing *Woods*, 855 F.3d at 649).

A plaintiff may support an inference of discrimination despite an employer's asserted nondiscriminatory reasons for an adverse employment action in several ways. "For example, a plaintiff may present evidence that the defendant has at different times given inconsistent or contradictory explanations for its conduct, or evidence that the proffered reason is false." *Magassouba*, 773 F. Supp. 3d at 216 (internal citations omitted) (first citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007); and then citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 144–45 (2000)). Importantly, "there must be sufficient factual allegations of differing treatment to 'nudg[e] [such] claims across the line from conceivable to plausible." *Royall v. C&C Meat Sales, Inc.*, Civ. No. PWG-20-1005, 2021 WL 1060441, at *4 (D. Md. Mar.

19, 2021) (internal citations omitted) (quoting *Twombly*, 550 U.S. at 570); *accord Holloway*, 32 F.4th at 299. Where claims "require 'speculation' to 'fill in the gaps' as to whether [Defendant's] actions were racially motivated," no such plausible inference can arise. *Royall*, 2021 WL 1060441 at *5 (quoting *McCleary-Evans*, 780 F.3d at 586). In this case, Mr. Forney has not alleged facts sufficient to support an inference of race-based discrimination.

Defendant offers as a legitimate, non-discriminatory reason for Mr. Forney's suspension that he refused to complete assigned timekeeping duties and for his termination that he failed to follow instructions regarding his laptop and the timekeeping duties. *See* (ECF No. 30-1 at 32.) Mr. Forney's own allegations support these nondiscriminatory reasons for termination, *see* (ECF No. 14 ¶¶ 26–31), such that they cannot produce an inference that race was a motivating factor in his suspension or termination. *Cf. Magassouba*, 773 F. Supp. 3d at 216 (explaining allegations that show nondiscriminatory reason is *false* may support inference of discrimination); *Barbour*, 105 F.4th at 595–96 (explaining inconsistency between employer's explanation, policies, and facts alleged may show discrimination). Although Mr. Forney alleges that he was given a poor performance review in February 2021, assigned timekeeping duties, denied teleworking opportunities and a detail to Phoenix in 2022, lost job responsibilities pertaining to SF-135 forms, and faced suspension and termination, he fails to allege any basis from which to infer that any of these actions occurred based on his race. That is, his allegations of racial discrimination "are not plausible in light of the 'obvious alternative explanation'" that he was disciplined, suspended, and terminated because he failed to complete duties as instructed. *McCleary-Evans*, 780 F.3d at 588. Defendant's Motion is GRANTED as to Mr. Forney's claim of race discrimination under Title VII in Count I.

33

## 2.  ADEA Discrimination: But-For Causation

Under the ADEA, a plaintiff must show "that age was the 'but-for' cause of the challenged adverse employment action." *Gross*, 557 U.S. at 180.  In other words, the Plaintiff must allege that "the employer 'would not have' taken the adverse employment action 'in the absence of age discrimination.'" *Rorie*, 653 F. Supp. 3d at 237 (quoting *Westmoreland*, 924 F.3d at 725).  Absent direct evidence of age discrimination, a plaintiff may show such causation either by establishing the elements of a prima facie claim of age discrimination or by adducing allegations sufficient to support but-for causation.  *See Westmoreland*, 924 F.3d at 725 (citing *Gross*, 557 U.S. at 177–78).  To allege a prima face claim of age discrimination under *McDonnell Douglas*, a plaintiff must allege that: "(1) he was a member of a protected class, i.e., that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA." *Rios-Grajales v. Bondi*, Civ. No. BAH-24-0297, 2025 WL 2484169, at *11 (D. Md. Aug. 28, 2025) (quoting *Laber*, 438 F.3d at 430).  Here, Mr. Forney does not allege that his "position remained open or was filled by a similarly qualified applicant who was substantially younger than" him.  *Id.*  Thus, he has not alleged a prima facie claim of age discrimination.

Nor has Mr. Forney alleged any other facts supporting an inference that he would not have been suspended or terminated but for his age.  As discussed above, Mr. Forney's allegations that he failed to assume assigned timekeeping duties or observe his supervisor's instructions regarding his laptop support Defendant's proffered legitimate, nondiscriminatory

34

reasons for his suspension and termination. Absent other allegations suggesting age discrimination, such nondiscriminatory reasons for the adverse employment actions render implausible Mr. Forney's claim of age discrimination. *See Lee v. W. Va. Univ. Med. Corp.*, --- F.4th ---, 2026 WL 1993164, at \*7 (4th Cir. 2026) (explaining that employee's failure to meet legitimate expectations suggested age was not a but-for cause of termination). Mr. Forney's bare allegations that his suspension and termination were caused by his age are insufficient to "raise a right to relief above the speculative level." *See Allen v. D. Harris Enters.*, Civ. No. BAH-23-2952, 2025 WL 359559, at \*4 (D. Md. Jan. 30, 2025) (quoting *Twombly*, 550 U.S. at 555). Defendant's Motion is GRANTED as to the ADEA discrimination claim in Count III.

### C. Counts II and IV: Retaliation

To state a claim of retaliation under Title VII or the ADEA, a "[p]laintiff must show the following elements: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action." *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 395 (D. Md. 2010) (citing *Tinsley v. First Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). "The filing of an EEO[] complaint is an activity protected by Title VII and ADEA." *Harris v. Charles E. Smith Life Cmtys.*, Civ. No. MJM-21-1242, 2022 WL 4777592, at \*11 (D. Md. Oct. 3, 2022) (collecting cases); *accord Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998).[15] As discussed

---

[15] As the Fourth Circuit has recognized, an employee's protected activity must be "directed to an 'unlawful employment practice' under Title VII, 42 U.S.C. § 2000e-3(a)," which includes "not only . . . employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful," including ongoing or "in progress" violations. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (first alteration in original) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). The

above, Mr. Forney first contacted an EEO officer on August 12, 2021, such that he engaged in protected activity on that date. *See Causey*, 162 F.3d at 803 (treating "filing an EEO complaint" as activity protected under Title VII and ADEA). Although Mr. Forney alleges protected activity and materially adverse actions, he has not alleged facts that support an inference of causation as to his Title VII and ADEA retaliation claims in Counts II and IV.

### i. Materially Adverse Employment Action

As to a retaliation claim, a materially adverse employment action includes any conduct "sufficient to dissuade a reasonable employee from engaging in protected activity." *Harris*, 2022 WL 4777592, at *11 (citing *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Strothers v*, 895 F.3d at 327). This definition is broader than that applied in the context of discrimination claims because it recognizes conduct as materially adverse even where it did "not affect the terms and conditions of employment." *Barnes v. Charles Cnty. Pub. Schs.*, 747 F. App'x 115, 119 (4th Cir. 2018) (citing *Burlington N.*, 548 U.S. at 64). "[D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" are materially adverse actions. *Harris*, 2022 WL 4777592, at *11 (citing *Boone*, 178 F.3d at 255). A suspension coupled with a proposal to terminate is materially adverse action. *West v. Noem*, Civ. No. JKB-23-1661, 2025 WL 896470, at *8 (D. Md. Mar. 24, 2025). Here, Mr. Forney has alleged materially adverse actions including denial of telework in

---

initial racial discrimination that Mr. Forney reported in August 2021 and the retaliation that he reported in April and May 2022 are both unlawful under Title VII, 42 U.S.C. § 2000e-3(a).

February 2022, assignment to inferior timekeeping duties in March 2022, suspension in May 2022, and termination in August 2022.[16]  (ECF No. 14 ¶¶ 22–24, 26, 29–32.)

### ii.  Causation

As relevant to a retaliation claim, both Title VII and the ADEA require a plaintiff to demonstrate causation "according to traditional principles of but-for causation . . . ."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 350 (2013).  The plaintiff must demonstrate "that a relevant decisionmaker was actually aware of the protected activity before making their decision."  *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025).  The Fourth Circuit has recognized two methods by which an employee may allege an inference of causation at the pleading stage.  First, temporal proximity of "no longer than two months" between the protected activity and the materially adverse action alone supports an inference of causation.  *Id.* (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021)); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (explaining "the temporal proximity must be very close" (internal quotation marks omitted)).  Second, "even in the absence of temporal proximity, causation can be established through a pervasive sequence of intervening events indicating disdain for or intermeddling with the protected activity."  *Barnhill*, 138 F.4th at 132 (collecting cases).  Under either method, "establishing a 'causal relationship' at the *prima facie* stage is not an onerous burden."  *Roberts*, 998 F.3d at 127 (quoting *Strothers*, 895 F.3d at 335).  Nevertheless, Mr. Forney has not alleged facts sufficient to support an inference of causation.

---

[16]  Mr. Forney also alleges that in April 2022 he was stripped of responsibilities as to SF-135 reviews, but it is not clear whether this was a supervisory duty.  To the extent the SF-135 reviews involved supervisory authority, this may have been materially adverse action.  *See Herkert v. Bisignano*, 151 F.4th 157, 167 (4th Cir. 2025).

First, Mr. Forney has not alleged causation by temporal proximity alone because, even construing all facts and drawing inferences in his favor, more than two months elapsed between the relevant decisionmakers' awareness of the protected activity and the earliest possible materially adverse actions. He alleges that he first engaged in protected activity in August 2021, but he does not allege when Defendant—specifically, Mr. Jones and Mr. Mitchell, who were the relevant decisionmakers for the suspension and Mr. Almaraz, who was the relevant decisionmaker for the termination—became aware of that activity.[17] He filed a formal complaint in December 2021, however, so the Court assumes without deciding that Defendant knew of the protected activity at the latest in December 2021. Plaintiff alleges retaliatory conduct that began, at the earliest, in February 2022 when he was denied teleworking opportunities. (ECF No. 14 ¶ 22.) He alleges additional retaliatory assignment of timekeeping duties in March 2022, removal of supervisory duties in April 2022, suspension in May 2022, and termination in August 2022. (*Id.* ¶¶ 23–32.) Such "a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation 'is too long to establish a causal connection by temporal proximity alone.'" *Roberts*, 998 F.3d at 127 (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)).

---

[17] An amended EEO complaint is a new protected activity from which a plaintiff may allege an inference of causation based on temporal proximity. *See, e.g.*, *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *25 (D. Md. Dec. 17, 2021). Critically, however, a plaintiff must allege that the relevant decisionmaker had knowledge of the amendment. *See id; Barnhill*, 138 F.4th at 132. Mr. Forney alleges that he amended his EEO complaint on August 12, 2022, and August 30, 2022. (ECF No. 14 ¶ 5.) To the extent he alleges that his termination on August 25, 2022, supports causation based on temporal proximity, he has not alleged that the relevant decisionmaker—Mr. Almaraz—knew of the amendment. Additionally, he alleges that the removal process began on July 25, 2022, when he received a Letter of Proposed Removal (ECF No. 14 ¶ 29), which weighs against causation based on temporal proximity to the amended EEO complaints.

Second, Mr. Forney has not alleged facts to support an inference of causation based on a series of events "indicating disdain for or intermeddling with the protected activity." *Barnhill*, 138 F.4th at 132. This includes "evidence of recurring retaliatory animus during the intervening period" after protected activity. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Notably, however, unfavorable treatment that predates the protected activity and continues thereafter weighs against an inference of causation. *Barnhill*, 138 F.4th at 133 (citing *Lettieri*, 478 F.3d at 650). Moreover, "allegations of discrimination and misconduct on [plaintiff's] part that caused contemporaneous responses from the [defendant], both before and after the initiation of [plaintiff's] EEO proceedings" weigh against any inference of causation. *Id.* In this case, Mr. Forney alleges unfavorable treatment predating his August 2021 EEO report by more than a year, which weighs against any inference of causation. *See id.*; (ECF No. 14 ¶¶ 14, 21). He further alleges that he engaged in ongoing misconduct by refusing assigned timekeeping duties, which resulted in his suspension, and refusing to follow instructions regarding his laptop, which then led to his removal. (ECF No. 14 ¶¶ 22, 23, 26, 29.) Such ongoing failure to respond to Defendant's instructions diminishes any causal inference between the EEO report and the materially adverse actions. *Barnhill*, 138 F.4th at 133–34. Accordingly, Mr. Forney has not alleged "more than a remote and tenuous connection" between the protected EEO complaint and the materially adverse actions. *Id.* at 134. Defendant's Motion to Dismiss (ECF No. 30) is GRANTED as to Counts II and IV.

## V.    Dismissal Without Prejudice as to Counts II and IV

Generally, leave to amend a complaint to address deficiencies in the original complaint falls within the discretion of the Court and should be freely given pursuant to Rule 15(a). *See,*

*e.g.*, *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) ("It is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)."). Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). However, leave to amend need not be granted unless requested by the plaintiff. *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.,* 807 F.3d 619, 624 (4th Cir. 2015) *abrogated on other grounds by Bing v. Brivo Sys., LLC*, 959 F.3d 605, 611–12 (4th Cir. 2020).

Mr. Forney has already amended his claims twice and, as discussed above, pursued allegations of discrimination and retaliation through a previous administrative process. Thus, Plaintiff's claims of race discrimination under Title VII in Count I and age discrimination under the ADEA in Count III are DISMISSED WITH PREJUDICE. This Court deems it prudent, however, to afford Plaintiff the opportunity to amend his allegations as to his retaliation claims under Title VII in Count II and under the ADEA in Count IV. He may file a Third Amended Complaint as to those retaliation claims within fourteen days of this Memorandum Opinion, i.e., by 5:00 p.m. on August 10th, 2026. Such amended complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). Accordingly, the DISMISSAL of Counts II and IV will initially

be WITHOUT PREJUDICE.  If an Amended Complaint is not filed by 5:00 p.m. on August 10th, 2026, then Counts II and IV shall be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 30) is GRANTED.  Specifically, the Title VII discrimination claim in Count I and ADEA discrimination claim in Count III are DISMISSED WITH PREJUDICE.  The Title VII retaliation claim in Count II and the ADEA retaliation claim in Count IV are DISMISSED WITHOUT PREJUDICE and with leave to amend within fourteen days of the date of this Memorandum Opinion and accompanying Order.  Separately, Plaintiff's Motion for Discovery (ECF No. 35) is DENIED AS MOOT, and Plaintiff's Motion for Leave to File Surreply (ECF No. 41) is DENIED.

A separate Order follows.

Date: July 27th, 2026

/s/
_____
Richard D. Bennett
United States Senior District Judge